# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant SAMUEL J. CHANCE**
**United States Army, Appellant**

ARMY 20140072

Headquarters, Joint Readiness Training Center and Fort Polk
Rebecca K. Connally, Military Judge
Colonel Samuel A. Schubert, Staff Judge Advocate (pretrial)
Lieutenant Colonel James A. Barkei, Staff Judge Advocate (post-trial)

For Appellant: Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Captain Patrick J. Scudieri, JA (on brief); Major Christopher D. Coleman, JA; Captain Patrick J. Scudieri, JA (on brief on supplemental assignment of error); Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Patrick J. Scudieri, JA (on reply brief on supplemental assignment of error); Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Cody Cheek, JA (motion for reconsideration).

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G Courie, III, JA; Major Daniel D. Derner, JA; Captain Timothy C. Donahue, JA (on brief); Colonel Mark H. Sydenham, JA; Major Daniel D. Derner, JA; Captain Timothy C. Donahue, JA (on brief on supplemental assignment of error); Colonel Mark H. Sydenham, JA; Major Daniel D. Derner, JA; Captain Samuel E. Landes, JA (opposition to motion for reconsideration).

18 April 2016

-------------------------------------------------------------------
MEMORANDUM OPINION ON RECONSIDERATION
-------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

A panel composed of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification each of maltreatment, abusive sexual contact, assault consummated by battery, and unlawful

entry, in violation of Articles 93, 120, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 893, 920, 928 and 134 (2012) [hereinafter UCMJ]. The panel sentenced appellant to a bad-conduct discharge, confinement for 180 days, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

On 26 February 2016, we issued a memorandum opinion in this case addressing four assigned errors. *United States v. Chance*, ARMY 20140072, 2016 CCA LEXIS 110 (Army Ct. Crim. App. 26 Feb. 2016) (mem. op.). The first assigned error we addressed in that opinion concerned the application of the Supreme Court's decision in *United States v. Elonis*, 135 S. Ct. 2001 (2015), to the offense of maltreatment under Article 93, UCMJ. On 8 March 2016, the United States Court of Appeals for the Armed Forces (C.A.A.F.) issued its opinion in *United States v. Gifford*, 75 M.J. __, 2016 CAAF LEXIS 219 (C.A.A.F. 8 Mar. 2016), interpreting *Elonis* as applied to a violation of Article 92, UCMJ. On 14 March 2016, appellant filed a motion requesting that we reconsider our decision in light of our superior court's decision in *Gifford.* Four days after appellant requested reconsideration, the C.A.A.F. issued an opinion in *United States v. Rapert*, 75 M.J. __, 2016 CAAF LEXIS 234 (C.A.A.F. 18 Mar. 2016), interpreting the application of *Elonis* to Article 134, UCMJ.

The government opposed appellant's motion for reconsideration. Given the substantial developments in applicable case law since we issued our original opinion on 26 February 2016, we granted appellant's motion to reconsider on 1 April 2016.[1] We now reissue that part of our opinion which addresses the application of *Elonis* to Article 93, UCMJ, in its entirety. The remaining portion of our 26 February 2016 decision is undisturbed.

## FACTS

Appellant was charged with maltreating Private E-2 (PV2) J.C. when he entered her room uninvited and began rubbing her shoulders without her consent. The surrounding circumstances of the offense are as stated in our 26 February 2016 opinion. *Chance*, 2016 CCA LEXIS 110, at *2-4.

## DISCUSSION

Appellant argues the Supreme Court's decision in *Elonis* requires that we set aside appellant's maltreatment conviction. In *Elonis,* the Court addressed the *mens rea* required for violating 18 U.S.C. § 875(c) ("Interstate communications"). 135 S. Ct. 2001.

---

[1] We commend appellate counsel for their excellent briefs in both requesting and opposing reconsideration.

We find the offense of maltreatment under Article 93, UCMJ, falls outside the Supreme Court's decision in *Elonis* for two independent reasons: First, a higher level of *mens rea* than that already provided by the offense is not needed to separate wrongful conduct from innocent conduct. Second, the President's explanation of an "objective" test is consistent with the statutory text.

### A. *United States v. Elonis*

In *Elonis*, the Supreme Court was faced with a criminal statute, 18 U.S.C. § 875(c), that criminalized communicating a threat through interstate commerce, but was silent on the *mens rea* required to commit the offense. The Court stated that when a statute is silent on the scienter needed to commit the offense *and* a scienter requirement is needed to separate wrongful from innocent conduct, the *mens rea* required to commit the offense must be greater than simple negligence. *Elonis,* 135 S. Ct. at 2010 ("When interpreting federal criminal statutes that are silent on the required mental state, we read into the statute only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct.") (quoting *Carter v. United States*, 530 U.S. 255, 269 (2000) (internal quotation marks omitted)).

*Elonis* did not, however, mandate a scienter requirement for all offenses. Rather, *Elonis* (at most) creates a gap-filling rule that stands for the "presumption" of a scienter requirement when the offense is otherwise silent. *Elonis*, 135 S. Ct. at 2010-11. The UCMJ contains numerous offenses that specifically require only a negligent mind. *See* UCMJ art. 110 (negligently hazarding a vessel); UCMJ art. 120(b)(2) (sexual assault; the government must prove that an accused knew or reasonably should have known that the victim was unconscious, asleep, or incapable of consent); and UCMJ art. 87 (missing movement "by neglect"). With regards to Article 134, UCMJ, the statute specifically criminalizes "disorders *and neglects*" that are prejudicial to good order and discipline or which tend to discredit the service. UCMJ art. 134 (emphasis added).[2] For those offenses where the crime clearly states a negligence standard, as appellant conceded in his brief, *Elonis* is inapplicable.

---

[2] As discussed below, the C.A.A.F. in *Rapert* interpreted the application of *Elonis* to the Article 134 offense of communicating threats. *Rapert*, 75 M.J. __, 2016 CAAF LEXIS 234. Our superior court found *Elonis* inapplicable to that offense but did not address the statutory text of Article 134, which criminalizes conduct amounting to a "neglect." *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶ 60.c.(2)(a) ("Prohibiting "disorders *and neglects*") (emphasis added). Nonetheless, we continue to believe, and both parties appear to agree, that when a statute includes a specific "negligence" standard, *Elonis* is inapplicable. The Supreme Court's entire decision in *Elonis* is predicated on the statutory absence of a *mens rea* requirement. The question in this case, therefore remains, does Article 93 (maltreatment) prescribe a *mens rea* requirement?

### B. United States v. Gifford and United States v. Rapert

Our superior court's decisions in *Gifford* and *Rapert* answer two questions that were unanswered when we issued our original opinion:  First, under what circumstances is *Elonis* applicable to an offense?  Second, if *Elonis* is applicable, what level of *mens rea* does *Elonis* require be read into the offense?

*United States v. Rapert* answered the first question.  In *Rapert*, our superior court determined whether *Elonis* was applicable to the offense of communicating a threat under Article 134, UCMJ, as articulated by the President.  75 M.J. __, 2016 CAAF LEXIS 234, at *2.  While *Elonis* involved communicating a threat, the military offense of communicating a threat contains an element—absent in the federal offense—that the conduct be "wrongful."  *Compare* 18 U.S.C. § 875(c) with *MCM*, pt. IV, ¶ 110.b.  In *Rapert*, our superior court found the requirement that the accused's acts be "wrongful" was sufficient to place the military offense outside the ambit of *Elonis*.  75 M.J. __, 2016 CAAF LEXIS 234, at *11.  Specifically, the court held the requirement that the accused's actions be "'wrongful,' prevents the criminalization of otherwise innocent conduct and places the case at bar beyond the reach of *Elonis*."  *Id.*

*United States v. Gifford* involved the application of *Elonis* to a conviction for the violation of a general order that specifically failed to state any *mens rea* requirement.  75 M.J. __, 2016 CAAF LEXIS 219, at *20.  The decision was significant in two respects.  First, based on our survey of relevant case law, this decision represented the first time an appellate court applied *Elonis* to an offense other than 18 U.S.C. § 875(c).  We interpret this to mean that *Elonis* is a decision of general applicability.[3]  Second, the court answered a question that specifically went unanswered by the Supreme Court in *Elonis*.  What is the minimum *mens rea* required by the Supreme Court's decision in *Elonis*?  The C.A.A.F. determined that in a case where *Elonis* is applicable, the minimum *mens rea* is "recklessness."  *Id.* at *24-25.

### C. Is Application of Elonis to Article 93, UCMJ, Necessary to Distinguish "Innocent" Conduct from "Wrongful" Conduct?

In *Elonis,* the Supreme Court limited its holding to circumstances where it is necessary to separate "wrongful" conduct from "innocent" conduct.  135 S. Ct. at 2010  ("When interpreting federal criminal statutes that are silent on the required mental state, we read into the statute *only that mens rea which is necessary* to

---

[3] In our initial decision, we took note of *United States v. Kirsch* for the proposition that as a case involving statutory interpretation, *Elonis* was limited to the interpretation of 18 U.S.C. § 875(c).  No. 07-CR-304S (6), 2015 U.S. Dist. LEXIS 168376, at *15 (W.D.N.Y. 16 Dec. 2015).  Our superior court's decision in *Gifford*, which applied *Elonis* to Article 92, UCMJ, requires that we discard that reasoning.

separate wrongful conduct from otherwise innocent conduct.") (internal quotation marks and citations omitted) (emphasis added). Put differently, absent confusion about whether an offense criminalizes innocent conduct, there is no reason to read into the offense an elevated *mens rea* requirement.

Thus, while an elevated *mens rea* requirement is necessary to discriminate between innocent speech and wrongful speech, no such requirement is needed with regards to the offense of maltreatment. The statute at issue in *Elonis,* 18 U.S.C. § 875(c), regulates the conduct between civilians (i.e., threats to kidnap or injure) who have no special duty towards (or authority over) one another. Article 93, UCMJ, on the other hand delineates the outer limit of conduct by leaders of the military who have been entrusted with the care of their subordinates. It is wrongful to "maltreat," "oppress," or to be "cruel" towards a subordinate. *MCM*, pt. IV, ¶ 17.b.

This is consistent with the C.A.A.F.'s decision in *Rapert*. In that case, (which also involved issues of threats and free speech), the court found the element of "wrongful" to be sufficient to remove the offense from the application of *Elonis*. 75 M.J. __, 2016 CAAF LEXIS 234, at *16. As noted above, in *Elonis*, the Supreme Court reemphasized that in the absence of a prescribed "mental state, we read into the statute only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct." 135 S. Ct. at 2010 (citations and internal quotation marks omitted). It borders on the tautological that if the government must prove beyond a reasonable doubt that conduct is "wrongful," there is no difficulty in separating "wrongful" from "innocent" conduct.

If the inclusion in *Rapert* of "wrongful" in an Article 134, UCMJ, offense is sufficient to remove the offense from the application of *Elonis*, than the words of criminality of "maltreat" "oppress" and "cruelty" are more than sufficient to remove Article 93, UCMJ, from application of *Elonis*.

This would be true even without considering that the UCMJ "cannot be equated to a civilian criminal code." *Parker v. Levy*, 417 U.S. 733, 749 (1974). In *Parker v. Levy*, the Supreme Court specifically noted that the offense of "maltreatment" criminalizes conduct that "in civilian life is not subject to criminal penalties." *Id.* The offense of maltreatment strikes directly at the ability to maintain a disciplined force, and Congress's ability to regulate the same. *See* U.S. Const. art. I, § 8. In other words, the Supreme Court has specifically noted that when it comes to the offense of maltreatment—even if we were to assume *Elonis* were otherwise applicable—direct comparisons to civilian criminal codes are inappropriate. Unlike

*Gifford* (which involved an offense directly comparable to civilian offenses), maltreatment is a unique military offense.[4]

In short, we find *Elonis* inapplicable because no higher *mens rea* is required to separate innocent from wrongful conduct; or, as phrased under Article 93, distinguishing between "treatment" and "maltreatment." A broader view helps to understand why the offense of communicating a threat in violation of 18 U.S.C. § 875(c) is fundamentally different than the offense of maltreatment under Article 93, UCMJ. The former criminalizes speech (which would otherwise be protected by the First Amendment).[5] The latter criminalizes behavior of someone who has been specifically entrusted with authority over a subordinate.

### D.  Congress and the President Have Intended That Maltreatment be Determined by an Objective Standard

The President has explained the offense of maltreatment as follows:

> *Nature of act.*  The cruelty, oppression, or maltreatment, although not necessarily physical, must be measured by an *objective* standard. . . .

*MCM*, pt. IV, ¶ 17.c.(2) (emphasis added).  While the "'[m]anual explanations of codal offenses are not binding on this Court,' they are persuasive indications of how the President, as head of the Executive Branch of Government, perceives an offense, including limitations on the Executive power that are not required by the Code or other applicable law." *United States v. Miller*, 47 M.J. 352, 356 (C.A.A.F. 1997) (quoting *United States v. Gonzalez*, 42 M.J. 469, 474 (C.A.A.F. 1995)).

Here, the President's explanation of the offense is entirely consistent with the statutory definition of the offense.  A person is guilty of maltreatment when he engages in "cruelty *toward*" or commits "oppression or maltreatment *of*" a person

---

[4] Were it otherwise, application of *Elonis* might have significant ramifications throughout the UCMJ.  Negligence not amounting to culpable negligence (e.g., "I forgot" or "I overslept") would be a complete defense to violations of Article 86(1) (failing to go to appointed place of duty), Article 92(2) (disobedience of other orders), and Article 92(3) (dereliction of duty), among others.  We do not read *Gifford* as intending such a far reaching and potentially troublesome result.

[5] The Supreme Court explicitly avoided addressing the First Amendment issues that may arise from the criminalization of negligent speech.  *Elonis*, 135 S. Ct. at 2012. However, one does not have to read the opinion too deeply to see the First Amendment issues that would arise had the Court decided the case differently.  The offense of maltreatment under Article 93, UCMJ, is unburdened by such concerns.

"subject to his orders." UCMJ art. 93 (emphasis added). The focus of this offense is that of the objective act and its effect rather than on the subjective intent of the actor. In other words, as the President's definition is convincing, this is not a circumstance where the offense is silent on the *mens rea*. There is no gap for *Elonis* to fill.

## CONCLUSION

The finding of guilty to the Specification of Charge V is AFFIRMED. The remaining findings and the sentence affirmed by our initial 26 February 2016 decision are again AFFIRMED for the reasons stated in that opinion. *Chance*, 2016 CAAF LEXIS 110, at *20-21.

Senior Judge HAIGHT and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court